UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

KENDALL DE WHITT-MATTHEWS,

      Plaintiff,

v.                                    Civil Action No. 4:17cv86

NANCY A. BERRYHILL,
*Acting Commissioner of*
*Social Security*,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Kendall De Whitt-Matthews seeks judicial review of the Commissioner of Social Security's denial of her claim for disability insurance benefits ("DIB") and Supplemental Social Security Income ("SSI"). Specifically, De Whitt-Matthews claims that the Administrative Law Judge ("ALJ") relied on flawed vocational expert testimony. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.

After reviewing the parties' briefs and the administrative record of the Agency's findings, this Report concludes that the ALJ complied with the law and regulations governing disability benefits under the Social Security Act. Accordingly, for the reasons stated in detail below, this report recommends that the court AFFIRM the final decision of the Commissioner by GRANTING the Commissioner's Motion for Summary Judgment (ECF No. 14) and DENYING De Whitt-Matthews's Motion for Summary Judgment (ECF No. 12).

## I. PROCEDURAL BACKGROUND

On April 15, 2013, De Whitt-Matthews filed an application for DIB. R. at 21. She alleged that she was disabled as of August 3, 2011, due to body-wide pain and soft tissue damage. R. at 242. The state agency denied her application initially and again upon reconsideration. R. at 126-30, 133-37. De Whitt-Matthews then requested an administrative hearing, which was conducted March 3, 2016. R. at 37-70.

The ALJ denied De Whitt-Matthews's claims for DIB and SSI, finding she was not disabled during the period alleged. R. at 18-36. The Appeals Council denied Plaintiff's request for review. R. at 1-7. De Whitt-Matthews then filed the Complaint in the present action seeking review of the administrative proceedings. Compl. (ECF No. 3).

## II. FACTUAL BACKGROUND

De Whitt-Matthews was born on February 28, 1966, and was 51 at the time of the ALJ's decision. R. at 21, 80. She completed high school, and has worked as a cleaner and housekeeper. R. at 45. The parties have not disputed the ALJ's findings regarding De Whitt-Matthews' functional limitations. See Pl.'s Br. (ECF No. 13); Def.'s Br. (ECF No. 15). Her medical history and her testimony to the ALJ are therefore only briefly summarized here. The testimony of the Vocational Expert ("VE") and the ALJ's reliance on that testimony is at issue and will be described in greater detail.

a. History of Treatment.

De Whitt-Matthews was in good health before she was in a car accident on August 3, 2011. In the accident, her vehicle was rear-ended. She told her doctors that "[h]er left arm flew out and she was thrown up from the seat." After the accident, she had serious pain throughout her body. During treatment with a pain management specialist in December of that year, she

complained of pain in the middle of her back and her lower back, as well as in her neck, arms, and heels. She also complained of numbness in the top of her head. She complained of trouble sleeping. R. at 388. She underwent an MRI examination which revealed cervical spinal straightening, a loss of normal cervical lordosis, and mild thoracic and cervical degenerative changes. R. at 412. Her treatment records with the pain management specialist reflect ongoing treatment for pain management throughout the next year. R. at 412-13.

By April 2015, De Whitt-Matthews' condition had generally stabilized. She was able to walk normally and unaided, though she did complain of pain on spinal flexion in her lower thoracic and upper lumbar region. She had good range of motion in her joints otherwise with only mild discomfort in her shoulders. R. at 560. She was using prescribed pain medication to manage her pain. Id. She was diagnosed with chronic pain and with multi-level cervical and thoracic degenerative disc disease and less-severe degenerative disc disease in her lumbar spine. R. at 561.

In early 2016, De Whitt-Matthews' treating pain management specialist and chiropractor completed "Physical Medical Source Statement" forms for her identifying significant functional impairments due to her chronic pain. R. at 563-66, 638-41, 648.

c.     Testimony Before the Administrative Law Judge.

De Whitt-Matthews testified before the ALJ at her hearing. She described her past work history as well has how the pain that resulted from her injuries in the 2011 car accident has affected her life. R. at 45-72. She testified she had severe muscle spasms that kept her from moving her arms or grasping. R. at 47. She also testified that her pain kept her from sleeping. R. at 49-50. She told the ALJ she had difficulty shopping because of the pain she was in while standing or walking. See R. at 51-52. She also told him she had trouble lifting objects much

heavier than a gallon of milk. R. at 55. She testified she does not exercise and does not carry on social activities because of her pain. R. at 57.

The ALJ also heard testimony from Edith Edwards, a vocational expert ("VE"), to assist him in determining whether there were jobs in the national economy De Whitt-Matthews was capable of performing. See R. at 72-81. He presented the VE with the following hypothetical person: someone of De Whitt-Matthews's age, education, and work background who, among other limitations,[1]

> [c]an lift/carry up to 10 pounds occasionally from waist to chest level. Walk about two hours within an eight-hour workday, but no longer than one block at a time on a flat even surface. Can stand/walk four to six hours in an eight-hour workday with a sit/stand option, changing position about every 15-20 minutes just to change positions for a few minutes for comfort.

R. at 64. The ALJ also added the restriction that the hypothetical person could only sit for four to six hours at a time. R. at 65. The VE testified that there were jobs in the national economy in significant numbers a person so situated could perform. R. at 65-66. Because the restrictions described exceeded the restrictions for "light" work in the Dictionary of Occupational Titles, the VE reduced the number of jobs available in the national economy to account for those light jobs a person with the limitations described was capable of doing. Id. The VE testified that, based on her professional opinion, developed over 30 years of experience as a vocational expert, a person with the limitations the ALJ described could be an office helper or a clerical checker, both categorized at the light exertional level. There were 34,375 and 65,000 of those jobs available in the national economy, respectively. Id. She also identified sedentary positions such a person could perform. Id.

---

[1] De Whitt-Matthews arguments are directed to postural and exertional limitations. Her RFC also included significant non-exertional limitations, which are unrelated to her arguments in this court.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under

5

age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act. 42 U.S.C. §§ 416(i), 423. The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

(1) Is the individual involved in substantial gainful activity?

(2) Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

(3) Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

(4) Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

(5) Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See 20 C.F.R. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Lewis, 858 F.3d at 861 (citing Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016)). When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

In this case, after conducting the foregoing analysis, the ALJ concluded that De Whitt-Matthews met the insured status requirements from her alleged disability onset date, August 3, 2011, through December 31, 2017. R. at 21. Ultimately, the ALJ concluded she had not been under a disability within the meaning of the Social Security Act during that time. See R. at 21, 31.

At step one, the ALJ found De Whitt-Matthews had not engaged in substantial gainful activity from her alleged disability onset date to the date of the hearing. R. at 23. At step two, the ALJ found that De Whitt-Matthews suffered from severe impairments related to her cervical and lumbar spine; myofascial pain syndrome; and obesity. Id. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At step three, the ALJ found that De Whitt-Matthews did not suffer from a listed impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. at 24. At step four, the ALJ found that De Whitt-Matthews had past

relevant work at the substantial, gainful activity level as a cleaner and housekeeper, but she could no longer perform this past work due to her severe impairments. R. at 29. The ALJ also developed a finding regarding De Whitt-Matthews's residual functional capacity ("RFC"). He determined she had numerous limitations, including the limitation that she was

> limited to lifting and carrying 10 pounds occasionally from waist to chest level . . . . [De Whitt-Matthews] can walk two hours within an eight-hour workday but no longer than one block at a time on a flat and even surface. The claimant can stand four to six hours and sit four to six hours within and eight-hour workday, but she can sit or stand no longer than 15-20 minutes at a time before needing to change positions for a few minutes for comfort.

R. at 25. At step five, relying on the testimony of the VE, the ALJ concluded that jobs existed in significant numbers in the national economy which De Whitt-Matthews could perform. R. at 29-31. Consequently, the ALJ determined De Whitt-Matthews did not have a qualifying disability during the relevant period and denied her claim for DIB and SSI. R. at 30-31.

De Whitt-Matthews now argues the ALJ erred at step five by relying on flawed vocational expert testimony. Specifically, she contends that the VE inaccurately characterized the number of jobs available in the national economy a person with the hypothetical limitations the ALJ presented to her could perform. Pl.'s Br. at 5. De Whitt-Matthews argues that, if the VE's testimony had been accurate, the limitations in the RFC would have eroded the number of light jobs available to her, effectively making her suited only to sedentary work. She asserts this would be harm sufficient to justify remand as application of the Grid Rules to a person of her age only capable of sedentary work would mandate a finding of disability.

Even though a person's limitations might make her technically capable of light work, "if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). The Commissioner does not

8

dispute that, under the Grid Rules, a person with De Whitt-Matthews' vocational factors who was effectively limited to sedentary work would qualify as disabled. See 20 C.F.R. § 404.201-203.

De Whitt-Matthews challenges both light jobs identified by the VE. First, regarding the clerical checker job, she says that, because the definition of light work in the DOT includes the ability to lift 10 to 20 pounds occasionally, it was error for the VE to opine that De Whitt-Matthews, whom the ALJ determined was limited to lifting "only 10 pounds occasionally from waist to chest level," could perform the clerical checker job at the light level. She argues it would have been correct for the VE to have limited her to only the sedentary version of the clerical checker job instead. Pl.'s Br. at 7 (ECF No. 13). Additionally, she argues that the VE erred by saying she could perform the light office worker job. She notes that the definition of this job in the DOT described various tasks which require walking. Because the ALJ limited her to walking only two hours in an eight-hour workday, she reasons that it was error for the VE to say she could perform the office helper job at the light level. Id. at 8-9. By De Whitt-Matthews' reasoning, she should properly have been restricted only to sedentary work. The effect of such a restriction would have been that, because of her age, under the Social Security Regulations, she could not have been expected to re-train to a sedentary job from her previous light work and would therefore have been found disabled. The Commissioner argues that both light jobs, as explained by the VE, are substantial evidence supporting a finding of no disability.

The Social Security Regulations provide that "when there is an apparent unresolved conflict between [VE] evidence and the [DOT], the adjudicator must elicit a reasonable explanation for the conflict" and "resolve the conflict by deciding if the [VE's] explanation for the conflict is reasonable." Fisher v. Barnhart, 181 Fed. App'x 359, 365 (4th Cir. 2006)

(unpublished per curiam); SSR 00-4p; 2000 WL 1898704, at *2 (noting that the DOT and testimony of the VE should typically be consistent). Thus, before relying on the VE's testimony to make a disability determination, the ALJ must resolve any apparent conflict. Id.

Ruling 00-4p provides a "clear remedy" for any inconsistency between the VE's testimony and the DOT: "reconciliation by reasonable explanation." Fisher, 181 F. App'x at 366. Moreover, "Ruling 00–4p acknowledges . . . that neither the Dictionary of Occupational Titles nor the vocational expert's testimony 'automatically trumps when there is a conflict.'" Id. at 365 (quoting SSR 00-4p). The Fourth Circuit requires the ALJ to uncover "apparent conflicts" between VE and DOT evidence, and to resolve any such discrepancies between a VE's testimony and the DOT by reasonable explanation. Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015). In order for conflicting expert testimony to be considered substantial evidence, the ALJ must "receive[] an explanation from the expert and determine[] that the explanation is reasonable and provides a basis for relying on the testimony rather than the DOT." Id. (citing SSR 00-4p).

Relevant to De Whitt-Matthews' appeal, the ALJ asked the VE about a hypothetical person who could lift ten pounds only occasionally from waist to chest level, walk only two hours in an eight-hour workday, and stand or sit four-to six hours with a stand/sit option. R. at 64-65. In response, the VE gave two examples of light jobs available to workers so limited: office helper or a clerical checker. R. at 65-66. The ALJ inquired if the VE's testimony was consistent with the DOT. The VE testified that it was except that the DOT was not as detailed in its descriptions of the limitations. She noted that the hypothetical did not permit "a full range" of the positions she described, noting that the DOT did not address a sit/stand option. As a result

she adjusted the number of jobs available in the national economy down to account for the more elaborately defined limitations. R. at 65-66.

Here, as required by Pearson, the ALJ properly inquired about consistency and the VE provided a reasonable explanation for the inconsistency. Compare R. at 30 (describing how he determined the extent to which De Whitt-Matthews' additional impairments beyond the normal light work impairments would erode the occupational base of light jobs), with Myers v. Astrue, No. 4:11cv62, 2012 WL 4479971, at *5 (E.D. Va. Sept. 28, 2012) (finding reversible error where the ALJ merely asked if the VE's testimony conflicted, "but failed to probe the VE's assertion that it did not"). During the hearing, the ALJ specifically asked the VE if her testimony was consistent with the DOT. R. at 66. Then, the VE explained that it was, except for adjustments she made for the added limitations. She specifically stated that her testimony did not encompass "the full range" of the positions described. Id. As the ALJ noted in his decision, the VE's testimony

> is not totally consistent with the information contained in the Dictionary of Occupational Titles. However, the vocational expert pointed out in her testimony that the limitations in the hypothetical question [were] for less than a full range of light exertional level work and is more detailed than the information contained in the Dictionary of Occupational Titles; therefore, the vocational expert relied on her experience in the vocational field to determine that the cited jobs meet the requirements of the hypothetical.

R. at 30 (citing R. at 154-55 (resume of VE)).

The DOT lists the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. See SSR 00-4p. Ruling 00-4p recognizes that a "VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." Id.

11

Here, the VE indeed provided more detailed information based on her observations as an expert in the field of vocational placement.

Moreover, unlike the cases where the ALJ fails to address an apparent conflict, the ALJ here explicitly recognized in his decision that the VE's "testimony is not totally consistent with the information contained in the [DOT]." R. 30. By eliciting further testimony from the VE and providing a reasonable explanation for the conflict, the ALJ satisfied his obligation under the regulations. Pearson, 810 F.3d at 210. Moreover, the inconsistency between the VE's testimony and the DOT was not great enough for De Whitt-Matthews to object during the hearing, and the ALJ is not bound to obtain an explanation for "all possible conflicts." Id. at 209; see also Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). Because the ALJ adequately addressed the inconsistency, his decision was supported by substantial evidence, and this assignment of error provides no basis for remand or reversal.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 14), and DENY De Whitt-Matthews's Motion for Summary Judgment (ECF No. 12).

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file written objections to the foregoing findings and recommendations within fourteen days from the date of service of this Report on the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March 16, 2018